UNITED STATES of America,
Plaintiff–Appellee,

v.

Darin SENN, Defendant–Appellant.

No. 95–4085.

United States Court of Appeals,
Seventh Circuit.

Argued May 16, 1996.

Decided Dec. 13, 1996.

Chris R. Larsen (argued), Office of the United States Attorney, Milwaukee, WI, for U.S.

James M. Shellow, Shellow, Shellow & Glynn, Milwaukee, WI, James J. Warner (argued), San Diego, CA, for Darin Senn.

Before EASTERBROOK, RIPPLE and DIANE P. WOOD, Circuit Judges.

RIPPLE, Circuit Judge.

In accord with his plea agreement, Darin Senn cooperated actively with the government in its drug investigations. The government, in return, filed a motion for downward departure based upon his substantial assistance. The government revised its recommendation, however, after the court granted its motion for dismissal of one count to which Mr. Senn had pleaded guilty. The court followed that revised recommendation. Mr. Senn appeals his sentence on the ground that the government violated his right of due process by failing to provide to the court an accurate, good faith assessment of his level of cooperation in its revised motion for downward departure. He also appeals the forfeiture of his property on double jeopardy grounds. For the reasons that follow, we affirm the judgment of the district court.

## I

## BACKGROUND

Seven individuals were known to be involved in a conspiracy to distribute cocaine, marijuana and methamphetamine. On June 22, 1994, a nine-count indictment was returned in the Eastern District of Wisconsin against Darin Senn and other known co-conspirators. The indictment also contained forfeiture provisions seeking the forfeiture of thirteen firearms and $50,000 seized from Mr. Senn at the San Diego, California, airport. Several months later, a one-count information also was filed; it charged Mr. Senn with evading the financial reporting requirements by structuring financial exchanges for less than $10,000.

On February 6, 1995, pursuant to a plea agreement, Mr. Senn pleaded guilty to the counts of conspiracy to distribute controlled substances (21 U.S.C. §§ 846, 841(a)(1)) and use of firearms during and in relation to the drug trafficking offense (18 U.S.C. §§ 924(c), 2). He also entered a guilty plea to the information charging him with currency structuring and evading the reporting requirements (31 U.S.C. §§ 5324(a)(1), 5322(a); 18 U.S.C. § 2). Mr. Senn agreed to cooperate with the government. In exchange, the government agreed to move for a downward departure under § 5K1.1[1] of the United

---

1. Guideline section 5K1.1, *"Substantial Assistance to Authorities,"* is a policy statement which provides:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of

States Sentencing Guidelines ("USSG") and 18 U.S.C. § 3553(e).[2] Mr. Senn significantly aided the government's investigation and gave testimony at subsequent trials.

Because of Mr. Senn's substantial assistance, the government filed, on November 13, 1995, a motion requesting a fourteen-level downward departure with respect to the conspiracy count. Under that recommendation, Mr. Senn would serve 24 to 30 months for the conspiracy count. When that sentence was added to the mandatory 60 months for the firearms charge, the total sentence would be 84 months.

Shortly before sentencing, the Supreme Court decided *Bailey v. United States,* — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). That decision invalidated the theory concerning "use" of a firearm during a drug trafficking crime (18 U.S.C. § 924(c)) on which the government had relied in this case. In light of *Bailey,* the government moved to dismiss the § 924(c) firearms count against Mr. Senn. It also notified both the court and the defendant that, because of the dismissal of that count, the government would adjust its sentencing recommendation in the presentence report.[3] Although it would continue to recommend a departure downward that is 50% from the low end of the guideline range, the government stated, it would change its specific recommendation concerning Mr. Senn's substantial assistance from a fourteen-level to a seven-level decrease.

At the sentencing hearing the government presented that revised recommendation. The court granted the government's motions for dismissal of the firearms count and for the seven-level downward departure based on the defendant's cooperation with the government. The court placed Mr. Senn's total offense level at 30. After a seven-level departure to level 23, which established a guideline imprisonment range of 57–71 months, the court sentenced Mr. Senn to 60 months in custody plus four years of supervised release and a $5,000 fine. Mr. Senn challenges only the downward departure calculation of his sentence.

## II

## DISCUSSION

### A. *The Downward Departure*

Mr. Senn's cooperation was originally evaluated and recommended as a fourteen-level departure from the sentencing guideline range. Mr. Senn submits that the government's modified evaluation of his cooperation, reduced to a seven-level downward departure, was inaccurate and violated his right of due process. He further asserts that the changed assessment was made in bad faith.

---

another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1.

**2.** The statutory provision concerning "limited authority to impose a sentence below a statutory minimum" states:

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C. § 3553(e).

**3.** As part of its adjustments, the government added a two-level enhancement, under USSG § 2D1.1(b)(1), for Mr. Senn's possession of firearms during the conspiracy. Mr. Senn had no objection to that enhancement. The government also increased the enhancement for Mr. Senn's role in the offense (USSG § 3B1.1) to four levels, but stated at the sentencing hearing that "Mr. Senn's position is closer to a three than to a four." Sent. tr., R. 264 at 5. The court set the aggravating role enhancement at three. None of these adjustments has been appealed.

Because Mr. Senn's claims are based on the contrast between the government's two recommendations for downward departure, we begin by setting out the original motion and modified recommendation as the United States presented them to the district court.

In its motion of November 13, 1995, the government offered a detailed summary of Mr. Senn's cooperation and then made this recommendation:

> At sentencing, the government will request a total 84 month sentence, constituting a 50% reduction in his sentence from the low end of the guideline range and entailing a 14–level downward departure (from level 29 to level 15, resulting in a 24–30 month range). Combined with the mandatory 60 month sentence under 18 U.S.C. 924(c), the defendant would face an 84 month sentence at the low end of the guideline range.

R. 219 at 5. However, after the government sought dismissal of the count charging use of firearms pursuant to 18 U.S.C. § 924(c), it adjusted its sentencing recommendation and, specifically, its motion for downward departure:

> Utilizing the same percentage reduction applied in the government's initial motion for downward departure, the government will recommend a 68–month sentence as to Darin Senn (a seven-level departure, or 50% from the low end of the guideline range) . . . .

R. 226 at 2.

### 1.

Mr. Senn does not disagree with the government's original motion for a fourteen-level downward departure for his substantial assistance in the investigation and prosecution of others. In that motion, the government recognized the quality of his cooperation and the extent and effectiveness of his assistance. However, after the firearms count was dismissed, Mr. Senn submits, the government arbitrarily changed its evaluation of the level of his cooperation from a fourteen-level decrease to a seven-level one, even though there were no changed circumstances that would have rendered his assistance less substantial.

Mr. Senn challenges the propriety of the reduced downward departure recommendation on two grounds. He contends first that the government improperly based its revised recommendation not on the level of Mr. Senn's assistance to the government but rather on the sentence it wanted to achieve. In his view, its evaluation of Mr. Senn's cooperation was therefore an inaccurate assessment, and yet it was that evaluation upon which the court relied. In support, Mr. Senn relies on *United States v. Thomas,* 930 F.2d 526 (7th Cir.), *cert. denied,* 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991), *overruled on other grounds, United States v. Canoy,* 38 F.3d 893, 906 (7th Cir.1994) (overruling *Thomas*'s interpretation of USSG § 5H1.6). In *Thomas,* the court held that the level of a downward departure must be determined under the guidelines and that the court may not consider other factors unrelated to cooperation in setting the level of departure. *Id.* at 529–30. Mr. Senn takes this analysis one step further. He claims that the government's failure to provide accurate information regarding his level of cooperation violated his right of due process. Mr. Senn also submits that a prosecutor's discretion is limited by a subjective good faith standard. In this case, he insists, the government's recommendation, based on an inaccurate assessment of his level of cooperation, was made in bad faith. On these grounds the defendant requests that we remand his case to the district court for resentencing.

### 2.

The government responds that it acted reasonably and in good faith when making both departure recommendations. According to the government, both downward departures were based upon the same rational theory. The government's first motion recommended that the court order a fourteen-level downward departure "to accomplish a 50% reduction in the defendant's overall sentence from the low end of the guideline range." R. 219 at 5. The motion stated that the reduction would produce a 24–30 month sentence and that the additional mandatory 60–month sentence under 18 U.S.C. § 924(c) for use of firearms would yield an 84–month

sentence at the low end of the guideline range. Thus, asserts the government, the specific downward departure it recommended was linked to the structure of the guidelines. After the government moved to dismiss the firearms count in light of *Bailey*, it simply adjusted its recommendation to accomplish the same result: a 50% reduction in the sentence.

### 3.

The decision to depart downward from the guidelines is wholly within the discretion of the district court, and our jurisdiction to review that decision is limited. We lack jurisdiction to review the extent of a downward departure that was granted under § 5K1.1.[4] However, we have jurisdiction to review a sentence imposed in violation of law.[5] Because Mr. Senn has framed his claim for a greater downward departure as a violation of constitutional due process, we shall consider whether his challenge is reviewable under § 3742(a).

Section 5K1.1 requires the government's motion for a downward departure to state "that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." The guideline gives the district court broad discretion to depart from the guidelines after considering such factors as the "utility, reliability, risk, and timeliness" of the defendant's cooperation. *Thomas*, 930 F.2d at 529; *see* § 5K1.1 p.s. (bkgr.) ("The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis. Latitude is, therefore, afforded the sentencing judge to reduce a sentence based upon variable relevant factors...."). However, the court depends upon the evaluation by the government "of the assistance rendered," § 5K1.1(a)(1), and "of the extent of the defendant's assistance." § 5K1.1 n. 3. Therefore the government, in its § 5K1.1 motion, must describe the assis-

tance given by a defendant to authorities and must evaluate the significance of that cooperation in terms of a recommended reduction in the defendant's sentence. The court then evaluates that assistance on an individual basis, giving substantial weight to the government's evaluation and considering the factors offered. *See* § 5K1.1(a), n. 3 & (bkgr.). When considered in the light of this evaluative process, Mr. Senn's assertions of arbitrary government changes to its assessment of his cooperation are without merit. In its original motion, the government fully described Mr. Senn's cooperation and explained that it was so substantial that his sentence should be reduced by one-half. In the revised calculus, the same percentage reduction was applied. At the sentencing hearing, the assistant United States attorney repeated the examples of helpful assistance from Mr. Senn and urged a significant downward departure. There is nothing arbitrary about the government's objective of reducing Mr. Senn's overall sentence by 50%. We believe the government's rationale for amending its motion for downward departure is cogent and consistent with the reasoning laid out in its initial motion.

We cannot accept as valid Mr. Senn's suggestion that the government based its recommendation to the court on the sentence it seeks rather than on the value of the defendant's assistance. Such a basis for the departure, he contends, is not "linked to the structure of the guidelines," as *Thomas* requires, *see* 930 F.2d at 530. In *Thomas*, however, Judge Flaum wrote:

> We recognize that, by their very nature, departures involve considerations that the guidelines do not already take into account. To say that the sentencing court must link the degree of departure to the guidelines means not that the court must employ existing guideline provisions to determine the appropriate degree of departure, but that it must employ the rationale and methodology of the guidelines when

---

4. *United States v. Rios–Calderon*, 80 F.3d 194, 198 (7th Cir.1996) (citing cases).

5. *See* 18 U.S.C. § 3742(a); *United States v. Jaroszenko*, 92 F.3d 486, 490–91 (7th Cir.1996) (reviewing judge's decision that he lacked the dis-

cretion to depart downward); *United States v. Atkinson*, 15 F.3d 715, 718 n. 2 (7th Cir.1994) (reviewing challenge to legal authority of the district court to impose that sentence).

considering cases not adequately addressed by existing guidelines. The sentencing judge is thus required to articulate the specific factors justifying the extent of his departure and to adjust the defendant's sentence by utilizing an incremental process that quantifies the impact of the factors considered by the court on the defendant's sentence.

*Thomas,* 930 F.2d at 530–31; *see United States v. Akindele,* 84 F.3d 948, 954–55 (7th Cir.1996) (following *Thomas*). The government's responsibility, then, is to describe the defendant's cooperation, to evaluate the extent of his assistance, and to quantify, in some rational fashion, the value of that cooperation by measuring the extent of departure from the guidelines it believes reflects meaningfully the defendant's assistance. In accomplishing this task, it is not at all unusual for the government to recommend a sentence reduction based on a percentage of the defendant's total sentence; indeed, courts are accustomed to such a recommendation.[6]

Once the sentencing court decides to depart downward, it in turn may quantify the assistance the defendant provided by a simple numerical reduction in the offense level or by a percentage reduction of the total sentence; both methods (and perhaps others we do not consider here) are tools that appropriately recognize the rationale of the guidelines—that the reduction should reflect accurately the assistance that defendant has rendered to the government. Nothing in the guidelines or in *Thomas* suggests that, in determining the degree of departure, the court cannot take into account the final sentence.

In this case, we believe the district court, provided with the thorough description of Mr. Senn's substantial assistance and the government's reasoned judgment that such cooperation deserved a 50% downward departure from the otherwise imposable sentence, reasonably utilized the formulation of a 50% reduction in the overall sentence. That approach ensured that the defendant received the same incremental credit for his cooperation that was applicable prior to the dismissal of the firearms count. The court explained that it was departing because Mr. Senn gave "very significant cooperation." R. 264 at 59. However, it noted, as well, the "extremely serious criminal activity" in which Mr. Senn and the other defendants were involved. *Id.* Thus the court correctly linked its departure to the methodology set forth in the guidelines. We conclude that the district court fulfilled its duty "to impose a just sentence derived within the discretionary bounds the guidelines set forth." *United States v. Atkinson,* 15 F.3d 715, 719 (7th Cir.1994).[7] We therefore hold that the district court in no way abused its discretion in applying the modified section 5K1.1 motion.

4.

We have concluded that the government's modified downward departure motion was neither arbitrary nor based on an improper or irrational methodology. Mr. Senn also asserts that the government's revised evaluation of his substantial assistance was inaccurate and inconsistent and therefore submitted in bad faith. Relying upon *United States v. Isirov,* 986 F.2d 183, 185 (7th Cir.1993) (involving a claim of incorrect cocaine amounts attributed to the defendant), he notes that he has a due process right to be sentenced on the basis of accurate information. However, in *Isirov,* we made clear that a defendant cannot succeed with such a claim unless he demonstrates that the information before the court was inaccurate and that the court relied on it. *Id.* Mr. Senn has not done so; he has offered no examples of

---

**6.** *See, e.g., United States v. Eppinger,* 49 F.3d 1244, 1252–53 (7th Cir.1995) (10% reduction); *United States v. Harris,* 994 F.2d 412, 414 (7th Cir.1993) (40% reduction); *United States v. Jimenez,* 992 F.2d 131, 132 (7th Cir.1993) (25% reduction); *see also United States v. Black,* 78 F.3d 1, 9 (1st Cir.) (30% reduction), *cert. denied,* —— U.S. ——, 117 S.Ct. 254, 136 L.Ed.2d 180 (1996); *United States v. Robertson,* 45 F.3d 1423, 1443 (10th Cir.) (50% reduction), *cert. denied,* —— U.S.

——, 115 S.Ct. 2258, 132 L.Ed.2d 265 (1995); *United States v. Mueller,* 27 F.3d 494, 495 (10th Cir.1994) (15% reduction).

**7.** In fact, in Mr. Senn's case, the issue is more straightforward than it was in *Atkinson,* for here the district court followed the same theory for departure and used the same percentage formulation in both downward departures.

misinformation or inaccuracies—either in the facts concerning his cooperation or in the calculations underlying that modification from fourteen to seven levels of recommended decrease. He does not claim the government deceived the court. We find no evidence of inaccuracies or deceptions in the record and are convinced that Mr. Senn's allegations have no factual basis.

■ Nor can we detect any evidence of bad faith on the part of the government. It consistently agreed to reduce Mr. Senn's sentence to one-half the total sentence, at the low end of the guideline range, and it carried out that promise. Mr. Senn has not claimed that the prosecutor harbored any animus toward him. *See United States v. Bullis*, 77 F.3d 1553, 1559 (7th Cir.1996); *United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996). As we have demonstrated earlier, the government consistently followed the rational view that his cooperation should reduce by 50% the sentence he must serve.

It is clear that the district court, in its discretion, properly evaluated Mr. Senn's assistance in light of the government's recommendation and determined the appropriate degree of departure from the guidelines. We hold that the district court's imposition of sentence on Mr. Senn, which included a seven-level departure downward, was not a violation of Mr. Senn's due process rights.

## B. *The Double Jeopardy Claim*

### 1.

The Double Jeopardy Clause states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Mr. Senn asserts that he is being punished twice for the same narcotics offense: first, when the civil judgment was entered forfeiting his drug proceeds and second, when the drug conspiracy criminal conviction was entered. The underlying facts are as follows.

The drug conspiracy charged in the first count of the indictment spans the period between March 19, 1989 and June 1994. During that time period, three forfeitures related to Mr. Senn occurred. Mr. Senn filed a claim in only one[8]—the seizure on April 16, 1991, in San Clemente, California, of $15,793 from a white Ford Mustang in which Mr. Senn was a passenger. Agents seized the money pursuant to 21 U.S.C. § 881(a)(6).[9] After Mr. Senn contested the forfeiture, he and the government reached a settlement: $11,500 was returned to Mr. Senn and the remaining $4,293 was forfeited to the United States.

Mr. Senn's motion to dismiss the indictment based on double jeopardy was denied by the district court. The court found that the civil forfeiture of $4,293 was remedial rather than punitive. It specifically noted that the costs of investigating and prosecuting Mr. Senn were rationally related to the $4,293 that was forfeited. The court then concluded that Mr. Senn failed to establish that his sentencing would violate the Double Jeopardy Clause.

### 2.

■ On appeal Mr. Senn submits that the criminal prosecution against him violated the

---

8. Two other seizures of money related to Mr. Senn were made on August 5, 1992, and on October 14, 1993. In both cases, no claim to retrieve the money was filed and the entire amount of money was forfeited to the United States. Mr. Senn admits that he failed to file a claim in these two forfeitures and acknowledges "the clear authority in this circuit" holding that jeopardy attaches only to those individuals who file claims to the property in question and thus are parties to the forfeiture proceedings. *United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). His assertion to us that he still suffered a punishment is futile. Mr. Senn did not contest those two forfeitures, did not participate in those proceedings, and thus was not formerly in jeopardy. He cannot claim that

his sentencing placed him in double jeopardy. *Id.; see also United States v. Ruth*, 65 F.3d 599, 603 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1548, 134 L.Ed.2d 651 (1996); *United States v. Penny*, 60 F.3d 1257, 1262 (7th Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996).

9. Mr. Senn's suggestion at oral argument that the forfeited property might have been seized under various statutory provisions is without merit. The investigating officer who filed the police report stated that he seized the $15,793 "pursuant to 21 U.S.C. 881(a)(6) as proceeds of drug trafficking," R. 201 Ex. 1, and the district court so found, R. 206 at 2.

Double Jeopardy Clause. The Supreme Court answered that question directly in *United States v. Ursery,* —— U.S. ——, ——, 116 S.Ct. 2135, 2149, 135 L.Ed.2d 549 (1996): "We hold that these *in rem* civil forfeitures are neither 'punishment' nor criminal for purposes of the Double Jeopardy Clause." Accordingly, we hold that Mr. Senn was not placed in jeopardy a second time when he was sentenced in the underlying criminal conviction. *See United States v. $87,118.00,* 95 F.3d 511, 515 (7th Cir.1996); *United States v. Evans,* 92 F.3d 540, 542 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 404, 136 L.Ed.2d 318 (1996). The district court's denial of Mr. Senn's motion to dismiss the indictment is affirmed.

### Conclusion

The judgment of the district court is affirmed.

**AFFIRMED.**