**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kevin WINTERS, Defendant–Appellant.**

No. 96–2941.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1997.

Decided June 25, 1997.

Barry Rand Elden, Chief of Appeals, Office of the United States Attorney, Criminal Appellate Division, David E. Bindi (argued), Chicago, IL, for plaintiff–appellee.

Andrea E. Gambino (argued), Office of the Federal Defender Program, Chicago, IL, for defendant–appellant.

Before BAUER, CUDAHY, and MANION, Circuit Judges.

BAUER, Circuit Judge.

Kevin Winters pleaded guilty to unlawful distribution of firearms and was sentenced to forty-six months' imprisonment. In imposing Winters' sentence, the district court refused to grant a downward departure despite a substantial assistance motion by the government. On appeal, Winters challenges his sentence, claiming that the district court misconstrued its authority to depart downward under U.S.S.G. § 5K1.1. We find that we have no jurisdiction to review Winters' sentence.

## BACKGROUND

Kevin Winters was an employee of United Parcel Service. While on the job, he met James Bush, a federally-licensed firearms dealer, who worked in the shipping and receiving department of the Chicago Transit Authority. Toward the end of 1994, Winters found himself down on his luck, having suffered a shoulder injury which would keep him out of work for nearly a year. So, he decided to strike a deal with Bush. Bush would obtain handguns, and Winters would sell the guns to gang members and narcotics dealers on the streets of Chicago. From September 1994 to mid-December 1994, the duo was responsible for the unlawful sale of approximately 250 handguns.

Winters was arrested on December 19, 1994 during an attempted sale of a handgun. He signed a detailed confession outlining his illegal gun sales with Bush and agreed to cooperate with the government. Winters helped to introduce Bush to an undercover agent, who made sixty-two illegal handgun purchases from Bush over a two-week period. Bush was arrested on February 2, 1995. Thereafter, he was indicted, entered a plea of guilty to weapons violations and was sentenced to fifty-seven months' imprisonment.

On October 2, 1995, Winters was charged with conspiring to unlawfully sell and deliver approximately 200 firearms in violation of 18 U.S.C. §§ 2, 371, 922(b)(2), 922(k) and 923(g)(3)(A). On December 19, 1995, Winters entered a guilty plea pursuant to a written plea agreement. The agreement indicated that the government would move for a downward departure based upon Winters' cooperation with the authorities. Specifically, it stated that the government would

recommend that the sentence imposed by the Court include a term of imprisonment in the custody of the Bureau of Prisons for fifty percent of the lowend of the applicable sentencing guideline range. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

On May 6, 1996, Winters filed a Sentencing Memorandum and Motion for Departure in which he asked the court to consider a wide range of financial, family and community matters in evaluating both the government's motion for departure and his own request for a lateral departure from the guidelines.[1] The government opposed the lateral sentencing portion of the motion and disputed Winters' claim of financial difficulties during the fall of 1994.

On June 28, 1996, Winters appeared for sentencing before Judge Brian Barnett Duff. Winters' counsel and the government each stated their respective positions. Winters' counsel reviewed Winters' family, work and lack of criminal history, and she informed the court of Winters' cooperation with the government which led to Bush's arrest. The government opposed Winters' request for a lateral departure, but argued in favor of the court granting a fifty-percent reduction from the low end of the guideline range in light of Winters' conduct after his arrest. The government explained to the court that Winters' cooperation hastened its apprehension of Bush.

After hearing from Winters, Judge Duff commented extensively before pronouncing sentence:

If you knew me better, you'd know I never make up my mind until the very last minute, and I take everything I hear in consideration. Most particularly I let the defendants speak last so I can hear what he or

1. A lateral departure within the guideline range allows a defendant to avoid incarceration by serving his sentence through community and home confinement. See *United States v. Groene*, 998 F.2d 604, 607–08 (8th Cir.1993) (discussing, but rejecting, a lateral departure).

she wants to say to me. And I do listen to the whole thing. And I feel quite limited by the guidelines often, and everybody knows that. I don't like them. Sometimes they are too low, and sometimes they are too high. Sometimes the recommendations are valid, and sometimes they are not, in my opinion.

\* \* \* \* \* \*

And I let [defense counsel] know early that she had to try to talk to me because I meant it, and not because I had made my mind up early, but because I wasn't at all convinced that this deserved a downward departure for any reason at all, at least not from the lower extent of the guidelines. And the reason I say that is because if there was no recommendation at all, on this record alone, I would not have gone to the low end of the guidelines. And the reason for that is that there are, from my experience here sitting on the bench for many years—the growing problems of our world include, of course, things like poverty and alcohol and drugs. But the three biggest concerns that society has today are guns, drugs, substance abuse and gangs.

\* \* \* \* \* \*

Now I am glad that Bush got convicted, but I think he would have been convicted anyway. It might have taken a little more time, but he'd be serving time. And a matter of whether he served an extra two months or five months is not going to make the difference here.

\* \* \* \* \* \*

Everything in the world has been done for you. But you have enabled the worst kinds of crime, drugs and violence. And it is not easy to say that you haven't done anything violent, you have. I just think it is reprehensible totally.... Your own wife and child could have walked out into your street, your block and been killed by one of the guns on a drive-by.... It is a terrible thing you did, really, truly.

There is a poet named Dante who wrote a poem called the Inferno. And he and another poet named Virgil in this book were walking down into hell. And at the lower—the lower you went into hell, the more

serious the crimes, and those were the crimes which were done with a clear head, not with any emotion or any passion, but simply because somebody calculated how to make money out of evil. That's exactly what you did.

\* \* \* \* \* \*

And so I am not going to downward depart at all. But on the basis of your—the rest of your life and your record, I am going to give you the minimum sentence. And the minimum sentence is 46 months. And I also agree that you are not in a position to pay any crimes [sic]—any—and that minimum is taken into consideration of the fact that you cooperated. But, see, they had you cold. You were going to go to jail and you knew it. People get very, very sorry about what they did when they have been caught. And I am sympathetic to that oftentimes. So I am going to go to the bottom, but I am not going to give you a downward departure.

When all was said and done, Judge Duff refused to' depart from the guidelines, and Winters ended up with a forty-six month prison sentence. Winters appeals, arguing that Judge Duff's comments at sentencing evidence a misunderstanding of the breadth of his departure authority under U.S.S.G. § 5K1.1.

### ANALYSIS

■ An appellate court lacks jurisdiction to review a court's discretionary refusal to depart downward, *United States v. Larkins*, 83 F.3d 162, 168 (7th Cir.1996), unless the sentence was imposed in violation of the law, 18 U.S.C. § 3742(a)(1), or the sentence was imposed as a result of an incorrect application of the sentencing guidelines, id. § 3742(a)(2). Winters claims that the district court conflated the standards and purposes behind a motion to depart under U.S.S.G. § 5K1.1 with those of § 5K2.0, and therefore the court imposed a sentence which was in violation of the law or the result of an incorrect application of the guidelines.

Section 5K1.1 of the guidelines provides that, upon a substantial assistance motion by the government, the court may depart from

the applicable guideline range. The section reads in full:

### § 5K1.1.*Substantial Assistance to Authorities* (Policy Statement)

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

  (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

  (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

  (3) the nature and extent of the defendant's assistance;

  (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

  (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1. Section 5K2.0 is another provision of the guidelines that authorizes the court to depart from the applicable guideline range. It allows a sentencing court to

impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling deci-

sion as to whether and to what extent departure is warranted can only be made by the courts.

U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). Winters claims that the district court did not consider any of the factors outlined in § 5K1.1 in refusing to grant the government's motion for a downward departure, but rather, the court discussed a myriad of factors unrelated to Winters' cooperation which are more appropriately considered as part of a § 5K2.0 analysis.

Winters directs us to *United States v. Thomas*, 930 F.2d 526 (7th Cir.), *cert. denied*, 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991), overruled on other grounds by *United States v. Canoy*, 38 F.3d 893, 906 (7th Cir. 1994). In that case, the district court departed from a ten-year mandatory minimum to a sentence of probation. The departure was based not only on the government's substantial assistance motion, but also on consideration of the defendant's extremely burdensome family responsibilities. On appeal, this Court explained that the defendant's family responsibilities were not a permissible basis for departure.[2] Because the district court did not indicate whether and to what extent the departure was based on the government's substantial assistance motion, we remanded the case for resentencing. We also recommended an analysis for future § 5K1.1 cases to aid sentencing courts in determining how far to depart from the guidelines where departure is appropriate:

The government's recommendation should be the starting point for the district court's analysis.... The district court should examine the government's recommendation in light of factors like, but not limited to, those listed in § 5K1.1.(a).... [D]epartures based on a defendant's cooperation with authorities may warrant something on the order of a two-level adjustment for each factor found by the court to bear similarly on its evaluation of the defendant's cooperation.

*Id.* 930 F.2d at 531.

■ Winters argues that the district court erred by failing to follow the analysis in

---

**2.** *United States v. Canoy*, 38 F.3d 893 (7th Cir. 1994) has since held that extraordinary family circumstances are a legitimate basis for departure under U.S.S.G. § 5H1.6.

*Thomas.* We disagree. First, as Winters acknowledges in his briefs, the district court is not required to make specific findings regarding the factors enumerated in § 5K1.1, and moreover, the analysis in *Thomas* is properly considered dicta. Second, there is a distinction between deciding *whether* to depart from the guidelines and determining *how far* to depart once the decision to depart has been made. Even a summary reading of § 5K1.1 shows that the policy statement requires a sentencing court to consider factors such as those enumerated only once it has decided, in its discretion, that departure is warranted. Section 5K1.1 reads: "Upon motion of the government stating that the defendant has provided substantial assistance . . ., the court may depart from the guidelines. . . . The appropriate reduction shall be determined by the court for reasons stated that may include . . . consideration of the following." Five factors are then listed. Section 5K1.1 does not read: "In determining *whether* and to what extent to depart, the court shall consider the following factors. . . ." Nor does it read: "Upon motion of the government stating that the defendant has provided substantial assistance, the court shall consider the following factors. . . ." In short, nothing compels a sentencing court to look at the factors enumerated in § 5K1.1 or to follow the analysis in *Thomas* at least until the court has decided that departure is appropriate.

■ The language of § 5K1.1 also reminds us that the decision to depart downward from the guidelines, even in the face of a substantial assistance motion by the government, is wholly within the discretion of the sentencing court. See *United States v. Senn,* 102 F.3d 327, 331 (7th Cir.1996). Section 5K1.1 provides that, upon a substantial assistance motion by the government, the court *may* depart from the guidelines. All parties in this case were aware of that fact. In his Sentencing Memorandum and Motion for Departure, Winters acknowledged: "When the government makes such a departure recommendation, the court is free to follow the recommendation, decrease or increase the extent of the departure, or reject the departure altogether." Furthermore, the plea agreement signed by Winters states:

"Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court."

Judge Duff did not in any way indicate a misunderstanding of his authority to depart. A review of the record and the sentencing transcript indicates that Judge Duff understood that he had the legal authority to depart (or not to depart), and that he considered the government's motion and the arguments of defense counsel, but found them unpersuasive and therefore chose not to depart. Winters contends in his opening brief: "In place of the appropriate analysis of the § 5K1.1 motion, the Court appeared to base its decision entirely on its opinion of the 'growing problems of our world,' the nature of the crime to which Mr. Winters entered his guilty plea, and a variety of other factors not related to his cooperation." Indeed, Judge Duff vehemently and unreservedly expressed his disdain for the conduct to which Winters had pleaded guilty—selling guns to Chicago gang members and narcotics dealers—during Winters' sentencing hearing. But between his musings, Judge Duff made clear that he had considered Winters' cooperation with the government. Perhaps another judge would have skipped the reference to Dante's *Inferno* and have been more sympathetic to the government's recommendation for departure. Nonetheless, Judge Duff did nothing that was in violation of the law or a misapplication of the guidelines, so Winters' claim is essentially that the district court erred in exercising its discretion not to grant a downward departure. Such a claim is not reviewable. Winters' appeal is

DISMISSED.