**UNITED STATES of America,
Plaintiff,**

v.

**Raymond WASHINGTON, Defendant.**

**No. 01–CR–191.**

United States District Court,
E.D. Wisconsin.

Nov. 17, 2003.

Elizabeth Blackwood, Racine, WI, for Plaintiff or Petitioner.

Daniel D. Resheter, Jr., Milwaukee, WI, for Defendant or Respondent.

## MEMORANDUM

ADELMAN, District Judge.

### I.

In fiscal year 2001, courts granted downward departures based on the defendant's substantial assistance to the government in 17.1% of all federal criminal cases. United States Sentencing Commission, *2001 Sourcebook of Federal Sentencing Statistics* 53 (2001). In drug trafficking cases, the rate was even higher—26.3%—compared to just 10.5% in all other cases.[1] *Id.* at 56.

The government obtained assistance from defendant Raymond Washington in this drug conspiracy case, leading it to file a motion for a sentence reduction based on substantial assistance under Fed. R.Crim.P. 35(b). I granted the government's motion and departed downward by eight levels. In this memorandum I set forth the methodology I employed and explain the basis for my decision.

---

1. Drug trafficking cases accounted for 22,882 of the 54,785 cases reported by the Commission in the FY 2001 statistics. *Id.* at 56. Courts granted 6023 substantial assistance departures in those 22,882 cases, but only 3346 substantial assistance departures in the 31,903 non-drug trafficking cases reported. *Id.; see also id.* at 80 (stating that substantial assistance departure rate is 25.7% in all drug cases). According to a report recently released by the General Accounting Office, courts departed on the basis of substantial assistance in 28% of all drug trafficking cases in fiscal years 1999–2001. United States General Accounting Office, *Federal Drug Offenses: Departures from Sentencing Guidelines and Mandatory Minimum Sentences, Fiscal Years 1999–2001* 12 (Oct.2003).

## II.

Defendant was charged with conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & 846. On May 1, 2003, I sentenced him to 120 months in prison, which was the mandatory minimum sentence. His offense level under the guidelines was 29 and his criminal history category III, which produced an imprisonment range of 108–135 months.

On November 6, 2003, the government filed a motion for sentence reduction under Rule 35(b), which provides:

(1) In General. Upon the government's motion made within one year of sentencing, the court may reduce a sentence if:

(A) the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person; and

(B) reducing the sentence accords with the Sentencing Commission's guidelines and policy statements.

(2) Later Motion. Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved:

(A) information not known to the defendant until one year or more after sentencing;

(B) information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing; or

(C) information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing and which was promptly provided to the government after its usefulness was reasonably apparent to the defendant.

(3) Evaluating Substantial Assistance. In evaluating whether the defendant has provided substantial assistance, the court may consider the defendant's presentence assistance.

(4) Below Statutory Minimum. When acting under Rule 35(b), the court may reduce the sentence to a level below the minimum sentence established by statute.

Fed. R. Crim P. 35(b).

Rule 35(b) serves as a post-sentencing analog to U.S.S.G. § 5K1.1, which allows the government to move for a departure from the guidelines at the time of sentencing if "the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." In ruling on substantial assistance motions, the Commission has indicated that the court should consider:

(1) the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a). The Commission has stated that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." U.S.S.G. § 5K1.1 cmt. n. 3.

While the government's recommendation as to the extent of departure should be the starting point for the court's analysis, *United States v. Winters,* 117 F.3d 346,

349 (7th Cir.1997), the extent of any departure granted is within the court's discretion. *See United States v. Newman*, 148 F.3d 871, 875 n. 2 (7th Cir.1998). As the Commission has stated:

> The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis. Latitude is, therefore, afforded the sentencing judge to reduce a sentence based upon variable relevant factors, including those listed above. The sentencing judge must, however, state the reasons for reducing a sentence under this section. 18 U.S.C. § 3553(c).

U.S.S.G. § 5K1.1 cmt. (background).

■ The Seventh Circuit has stated that "the level of a downward departure must be determined under the guidelines and that the court may not consider other factors unrelated to cooperation in setting the level of departure." *United States v. Senn*, 102 F.3d 327, 330 (7th Cir.1996) (citing *United States v. Thomas*, 930 F.2d 526, 529–30 (7th Cir.1991), *overruled on other grounds by United States v. Canoy*, 38 F.3d 893, 906 (7th Cir.1994)). Nevertheless, Rule 35(b) and § 5K1.1 provide the district court with "broad discretion to depart from the guidelines after considering such factors as the 'utility, reliability, risk, and timeliness' of the defendant's cooperation." *Id.* at 331 (quoting *Thomas*, 930 F.2d at 529). While the departure must be "linked to the structure of the guidelines," the Seventh Circuit has eschewed any rigid methodology:

> To say that the sentencing court must link the degree of departure to the guidelines means not that the court must employ existing guideline provisions to determine the appropriate degree of departure, but that it must employ the rationale and methodology of the guidelines when considering cases not adequately addressed by existing

guidelines. The sentencing judge is thus required to articulate the specific factors justifying the extent of his departure and to adjust the defendant's sentence by utilizing an incremental process that quantifies the impact of the factors considered by the court on the defendant's sentence.

*Thomas*, 930 F.2d at 531.

As the court explained in *Senn:*

> Once the sentencing court decides to depart downward, it in turn may quantify the assistance the defendant provided by a simple numerical reduction in the offense level or by a percentage reduction of the total sentence; both methods (and perhaps others we do not consider here) are tools that appropriately recognize the rationale of the guidelines—that the reduction should reflect accurately the assistance that defendant has rendered to the government. Nothing in the guidelines or in *Thomas* suggests that, in determining the degree of departure, the court cannot take into account the final sentence.

102 F.3d at 332.

Thus, the Seventh Circuit has not mandated any particular method. Nevertheless, the approach suggested in *Thomas* seems to make the most sense in recognizing the need to quantify and link the departure to the guidelines, while still retaining flexibility. In *Thomas*, the court said:

> The district court should examine the government's recommendation in light of factors like, but not limited to, those listed in § 5K1.1.(a). As for the weight to accord such factors, the guideline provision that is most directly analogous to a downward departure for rendering substantial assistance is § 3E1.1, which authorizes a two-level reduction in the base offense level for acceptance of responsibility. By way of negative inference, the two-level enhancement for ob-

struction of justice, § 3C1.1, may also be relevant. These provisions suggest that departures based on a defendant's cooperation with authorities may warrant something on the order of a two-level adjustment for each factor found by the court to bear similarly on its evaluation of the defendant's cooperation. They provide but imperfect guidance, however, since weighing the impact of any given factor on the quality of the defendant's cooperation is an imprecise art, at best. We do not intend to preclude the district court from utilizing a scale with more gradations in order to assign greater or lesser weight to the factors it considers.

930 F.2d at 531; *see also Winters,* 117 F.3d at 349–50 (recognizing *Thomas* methodology, but noting that it is not mandatory). By granting points for each § 5K1.1(a) factor found,[2] the court is able to objectively quantify the assistance provided. This will reduce unwarranted disparity, increase predictability, guide the court's exercise of discretion, and link the departure to the structure of the guidelines. I employed the *Thomas* method in the present case.

### III.

■ The government recommended that defendant receive a four level reduction. However, after reviewing the pertinent factors, I concluded that an eight level reduction was warranted.

The first relevant factor is the significance and usefulness of the defendant's assistance. Under this factor, I generally consider the degree to which the government depended upon the cooperating defendant in bringing charges and obtaining convictions against others. The government indicated that defendant was instru-

mental in obtaining convictions in two other cases.

In the first, defendant conducted a controlled drug buy, which led to the arrest and prosecution of one Conrad Deslandes. Deslandes pled guilty to possession within intent to distribute in excess of 10,000 grams of marijuana in state court and on August 29, 2003 was sentenced to three years in prison, a $1000 fine and $9500 contribution to a crime prevention organization. While defendant's cooperation appeared to be the catalyst for the Deslandes prosecution, it is unclear whether the government also obtained information against Deslandes from other sources.

In the second case, defendant also participated in a controlled buy from, and later testified at the sentencing hearing of, one Addo Williams. Williams was indicted in this district. The controlled buy led to one of the counts in the indictment against Williams, although the government apparently based the other counts on different sources of information. Williams pled guilty and was recently sentenced to 96 months in prison. As noted, defendant testified at Williams's sentencing hearing.

I concluded that defendant was entitled to a two level reduction for this factor, one for each conviction he assisted the government in obtaining. I do not suggest a one-level-per-conviction rule, but in this case, given the government's statement that defendant was instrumental in securing convictions in two significant drug cases, a total of two levels was warranted.

The second factor is the truthfulness, completeness and reliability of the information the defendant provided. Relevant here is whether judges and juries have relied upon the defendant's testimony in making decisions and rendering verdicts, whether the individual against whom the

---

**2.** The court is not strictly limited to the factors listed in § 5K1.1. However, these factors seem to cover the range of relevant information in the substantial assistance context.

defendant cooperated entered a plea of guilty due to the defendant's provision of information and evidence, and whether law enforcement trusted and relied upon the defendant. In the present case, the government indicated that defendant's information was truthful and reliable in bringing the two prosecutions mentioned above. Moreover, the defense presented evidence that the investigating FBI special agent considered defendant trustworthy and reliable: defendant provided information to the agent on other cases and on one occasion wore a wire in connection with another investigation. I therefore concluded that this factor was worth two levels.

The third factor is the nature and extent of the defendant's cooperation. Relevant here is whether the defendant provided active assistance—by working undercover or testifying in court, for example—or whether he simply provided information. In this case, defendant did more than debrief: he provided active cooperation, making drug buys and testifying at a sentencing hearing. The parties advised that the sentencing hearing was protracted, and that defendant withstood the pressure of cross-examination well. He also provided information and offered to help in other investigations. This was worth two levels.

The fourth factor is whether the defendant or his family suffered any injury, or danger or risk of injury, due to his cooperation. Virtually all cooperation in the investigation of criminal activity involves some risk. However, participation in controlled drug buys may be particularly risky. *See United States v. Thomas*, 159 F.3d 296, 297 (7th Cir.1998) (describing

robbery of buy money from confidential informant). Likewise, "public" acts of cooperation such as testifying in open court may create added risk. The court may also consider whether the defendant was confined during any period of time when he was "publicly" cooperating, and whether the defendant's fellow inmates knew of his provision of assistance. Of course, the court should consider any actual threats or violence visited upon the defendant or his family.

In the present case, defendant participated in two controlled buys, but the parties presented no evidence of any specific danger in either instance. However, the parties did advise that Williams made a credible threat, confirmed by law enforcement, against defendant's family after defendant testified. Fortunately, no actual injury to defendant or his family has occurred. Therefore, I subtracted one level for this factor.

The final factor is the timeliness of the defendant's assistance. Relevant here is whether the defendant immediately decided to cooperate upon arrest. Defendant stated that he began cooperating upon his release from pre-trial custody, which was several weeks after this case commenced. He argued that he cooperated as soon as he was able. I concluded that the timeliness factor warranted an additional one level under the circumstances.

Thus, totaling the above factors, I concluded that an eight level reduction was appropriate. This brought defendant to an offense level of 21 and an imprisonment range of 46–57 months.[3] Consistent with

---

**3.** Because the mandatory minimum sentence fell within the guideline range, I simply departed from the offense level specified by the guidelines. *Cf. United States v. Hayes*, 5 F.3d 292, 295 (7th Cir.1993) (holding that, where the statutory mandatory minimum sentence is higher than the upper end of the guideline range, the court departs from the statutory

level, i.e. the lowest offense level that could support the statutory minimum); *United States v. Jones*, 233 F.Supp.2d 1067, 1075 (E.D.Wis.2002) (holding that, where the guideline range is higher than the statutory maximum sentence, the court should depart from the lowest range that could support the statutory maximum).

the recommendations of both parties, I re-sentenced defendant at the low end. All other conditions of the original judgment were re-imposed.