**UNITED STATES of America,
Plaintiff,**

v.

**Quaneka WILLIS, Defendant.**

**No. 02–CR–224.**

United States District Court,
E.D. Wisconsin.

July 19, 2004.

Elizabeth Blackwood, Racine, WI, for Plaintiff.

Robert Keller, Racine, WI, for Defendant.

### SENTENCING MEMORANDUM

ADELMAN, District Judge.

Defendant Quaneka Willis was charged with aiding and abetting the October 29, 2001 robbery of the Mutual Savings Bank, where she was employed as a teller. Defendant had been approached by her father, Larry Willis, about assisting him with a robbery. Apparently after some cajoling, she agreed to prop open the back door of the bank after closing time, thereby allowing Larry Peterson—the gun man recruited by Larry Willis to actually commit the crime—to enter the bank, restrain the other tellers, and remove the money.

The crime went unsolved for nearly two years, until October 2002 when defendant was interrogated by the FBI. After being advised of her *Miranda* rights, defendant confessed to her role in the robbery and implicated her father. Larry Willis was arrested shortly thereafter and identified Peterson (who had been heavily disguised) as the gun man. Shortly after Larry Willis was arrested, defendant came back to the FBI and indicated that she had recently run into Peterson and realized that he was the robber.

Defendant agreed to plead guilty to the offense and testify against the others. Larry Willis pled guilty as well, but Peterson requested a jury trial. Defendant participated in pre-trial preparation and was ready to testify but Peterson decided to plead guilty on the day of trial.

A pre-sentence report was prepared, which calculated defendant's sentence under the United States Sentencing Guidelines. Although her sentencing occurred after the Supreme Court issued its decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), defendant agreed to waive her rights under that decision and proceed with sentencing under the guidelines, with the court making the necessary findings of fact.[1]

I determined that the base offense level was 20 under U.S.S.G. § 2B3.1(a); plus 2 under § 2B3.1(b)(1) because the property of a financial institution was taken; plus 2 under § 2B3.1(b)(4)(B) because the tellers were restrained; plus 2 under § 2B3.1(b)(7)(C) because the loss exceeded $50,000; minus 2 under § 3B1.2(b) based on defendant's minor role in the offense;

---

1. Defendant was sentenced before the Seventh Circuit decided that *Blakely* applied to the guidelines (earlier the same day actually), *see United States v. Booker,* 375 F.3d 508 (7th Cir.2004), but in anticipation of that result I had adopted a procedure of procuring waivers and sentencing those defendants willing to proceed as before.

and minus 3 under § 3E1.1 for acceptance of responsibility, for a total offense level of 21. Because she had no prior record, defendant's criminal history category was I. Thus, her imprisonment range was 37–46 months.

However, the government filed a downward departure motion under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) based on defendant's substantial assistance, requesting a one-third reduction in her sentence. After hearing the parties' presentations, I granted the government's motion, departing to Zone B of the sentencing grid and imposing a sentence of five years probation with a condition of six months home confinement. In this memorandum I set forth more fully the basis for my decision.

## I.

In ruling on a substantial assistance motion, the court considers:

(1) the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1.

■ Substantial weight should be given to the government's evaluation of the usefulness of the defendant's assistance, and the government's recommendation as to the extent of departure should be the starting point for the court's analysis. *See United States v. Winters,* 117 F.3d 346, 349 (7th Cir.1997); U.S.S.G. § 5K1.1cmt. n. 3. However, the extent of any departure granted is within the court's discretion.

*See United States v. Newman,* 148 F.3d 871, 875 n. 2 (7th Cir.1998).

The court should link the departure to the structure of the guidelines. *See United States v. Senn,* 102 F.3d 327, 331 (7th Cir.1996). In accomplishing this task, the Seventh Circuit has suggested that something on the order of a two level adjustment for each § 5K1.1 factor found is reasonable, although this method is not required. *See United States v. Winters,* 117 F.3d 346, 349–50 (7th Cir.1997). In considering such motions, I have tended to follow this method, finding that it allows me to objectively quantify the assistance provided, reduce unwarranted disparity, increase predictability, guide my exercise of discretion, and link the departure to the structure of the guidelines. *E.g., United States v. Washington,* 293 F.Supp.2d 930, 934 (E.D.Wis.2003).

■ In the present case, I concluded that an 11 level departure was appropriate. Although this was an ample departure, it was well-supported by the facts.

Under the first factor, I awarded defendant a four level reduction. The government indicated that defendant's assistance was extraordinarily useful in solving this two year old bank robbery. In fact, had defendant not confessed and implicated the others, the government believed the crime may have gone unsolved. Therefore, I believed it appropriate to award defendant a two level reduction for each defendant regarding whom she was instrumental in securing a conviction. Indeed, a greater reduction could perhaps have been justified under this factor because, as the government candidly admitted, had defendant not confessed, it is doubtful any charges could have been proved against her. Thus, defendant was responsible, through her cooperation, for the conviction of three defendants, including herself.

I awarded two level reductions under the second and third factors as well. The

government indicated that defendant was completely truthful and reliable, and that she was willing and prepared to provide testimony against the others.

I awarded a one level reduction under the fourth factor based on defendant's willingness to cooperate against her father. The evidence showed that defendant's relationship with her father was strained as she was growing up—he was in and out of prison most of the time—and that she participated in this offense out of a warped desire to please him and mend their relationship; instead, due to her cooperation, he ended up in prison. Finally, I awarded a two level reduction under the final factor because, according to the government, defendant's cooperation was timely.

With the departure, defendant's offense level was 10, placing her in zone B of the sentencing grid. Those in Zone B are generally eligible for probation. U.S.S.G. § 5B1.1. However, defendant was charged with a class B felony, *see* 18 U.S.C. § 2113(d); 18 U.S.C. § 3559(a)(2), which would ordinarily preclude a sentence of probation. 18 U.S.C. § 3561(a)(1); U.S.S.G. § 5B1.1(b)(1). Nevertheless, because the government moved for a downward departure under § 3553(e), this prohibition was inapplicable.

## II.

■ Bank robbery carries a maximum sentence of 25 years in prison if the defendant "puts in jeopardy the life of any person by the use of a dangerous weapon or device." 18 U.S.C. § 2113(d). In the present case, Peterson placed the lives of the tellers in jeopardy through his use of a firearm. Thus, defendant was subject to this maximum sentence. An offense with a maximum sentence of 25 years or more is a class B felony, 18 U.S.C. § 3559(a)(2), and 18 U.S.C. § 3561(a)(1) provides that an offender may not be sentenced to pro-

bation if the offense is a Class A or B felony.

However, in enacting 18 U.S.C. § 3553(e), Congress granted district courts limited authority to sentence a defendant below the statutory mandatory minimum otherwise provided by law:

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C. § 3553(e).

Although § 3553(e) is usually applied to avoid mandatory minimum *prison* sentences, it also applies to the statutory prohibition on probation. *See, e.g., United States v. Daiagi,* 892 F.2d 31, 33 (4th Cir.1989). As the court stated in *Daiagi:*

As we view Section 3553(e), there is no logical distinction between the two situations, i.e., between the mandatory minimum sentence and the prohibition against probation. The statute was intended to free the sentencing judge to exercise, on motion of the Government, a prudent discretion by disregarding, where there has been substantial governmental assistance by the defendant, both the affirmative mandate to impose a minimum prison sentence and the negative mandate of Section 3561(a)(1) not to grant probation to a Class A or a Class B offender. Under this reconciliation of the two statutes, the ban on probation in sentencing in Class A and Class B cases is maintained save in the rare case where the assistance of the defendant has been sufficiently substantial that the Government determines to

move the sentencing court to impose a sentence below the statute's minimum or without the prohibition on a probationary sentence. We accordingly conclude that the district judge could have granted probation in this case. Such conclusion conforms to the rule of lenity, which holds that penal statutes are to be strictly construed against the Government and in favor of the defendant. *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971).

*Id.* at 33 (footnotes omitted); *see also United States v. Fowlkes,* 183 F.Supp.2d 1136, 1138 (E.D.Ark.2002) (imposing sentence of probation on Class B felony based on government's § 3553(e) motion).

The Seventh and Ninth Circuits have held that when the specific statute of conviction forbids probation, the judge may not impose such a sentence even if the government has moved under § 3553(e). *United States v. Roth,* 32 F.3d 437, 440 (9th Cir.1994); *United States v. Thomas,* 930 F.2d 526, 528 (7th Cir.1991), *overruled on other grounds by United States v. Canoy,* 38 F.3d 893, 906 (7th Cir.1994). In *Thomas,* the defendant was convicted under 21 U.S.C. § 841(b), which provides that:

> Except as otherwise provided in Section 845, 845a or 845b of this title, any person who violates subsection (a) of the section shall be sentenced as follows: (1)(A) [for violations involving more than one kilogram of heroin] such person shall be sentenced to a term of imprisonment which may not be less than 10 years .... *Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph.*

*Id.* at 527 (quoting 21 U.S.C. § 841(b)) (emphasis added). The court stated:

> The presence of the probation ban in a section that imposes a statutory mini-

mum means that there must be some other provision of law that permits the court to impose a sentence below that statutory minimum. That provision is § 3553(e). Congress effectively eliminated probation by creating a statutory minimum; it needed the probation ban only to limit the discretion given to sentencing courts by § 3553(e) to depart from the statutory minimum by eliminating probation as a sentencing option.

*Id.* at 528.

The court distinguished *Daiagi* because in that case the statute of conviction:

> contained no language establishing a mandatory minimum term of imprisonment or specifically proscribing probation. The only probation bar applicable to Daiagi came from 18 U.S.C. § 3561, a general provision proscribing probation for all Class A and B felonies. Section 3561 did not contain any language similar to the "notwithstanding any other provision of law" language contained in § 841(b) .... The only statutory minimum faced by Daiagi, then, was the one-day minimum term of imprisonment implicit in the general probation ban of § 3561. By its terms, § 3553(e) trumps that mandatory minimum. The court held, therefore, that § 3553(e) authorized the sentencing court to award probation to Daiagi. The court could not have held otherwise without rendering § 3553(e) a nullity, a fact that shows that *Daiagi* is perfectly consistent with our own rationale in this case. Here, unlike in *Daiagi,* the district court faced a clause—"notwithstanding any other provision of law"—that made the probation bar trump § 3553(e). That clause dictates our result, and distinguishes Thomas's case from Daiagi's.

*Id.*

In the present case, the statute of conviction contained no mandatory minimum

term of imprisonment or any ban on a probationary sentence. Thus, *Daiagi* applied, *Thomas* did not.

## III.

The evidence showed that a probationary sentence was appropriate. Defendant had no prior record and became involved in this offense only at the insistence of her father. She was the single mother of a small child and had a steady employment history. Although the offense was very serious, the evidence showed that prior to the robbery defendant's father had assured her that no firearm would be used and that no one would be hurt. Thus, defendant was shocked when Peterson came armed.[2] It appears that her decision to confess to the crime was genuinely motivated by a guilty conscience which could no longer allow her to remain silent. Thus, under the factors applicable to sentencing under § 3553(a), a probationary sentence with some period of confinement in the community was appropriate.

I sentenced defendant to five years probation, with the condition that she be confined to her home for six months and make restitution to the bank, joint and several with Larry Willis and Larry Peterson. Other conditions of the sentence appear in the judgment.

2. Based on this evidence, the parties agreed that no enhancement under U.S.S.G. § 2B3.1(b)(2) was appropriate because defendant could not reasonably foresee that a firearm would be used.