JORDAN, Circuit Judge:.
“Corruption,” Edward Gibbon wrote more than two centuries ago, is “the most infallible symptom of constitutional liberty.” EdwaRd Gibbon, The HistoRY of the Decline and Fall of the Roman Empire, Vol. II, Ch. XXI, at 805 (David Womersley ed., Penguin Classics 1995) [1781]. And so, although unfortunate, it is perhaps not surprising that, even today, people continue to pay bribes to government officials with the expectation that they will make decisions based on how much their palms have been greased, and not what they think is best for the constituents they serve.
*1302 In this criminal appeal involving corruption in Alabama’s higher education system, we consider whether the district court abused its discretion by imposing a sentence of three years of probation (with a special condition of six to twelve months of home confinement) on a 67-year-old business owner who — over a period of four years — doled out over $600,000 in bribes to a state official in order to ensure that his company would continue to receive government contracts, and whose company reaped over $5 million in profits as a result of the corrupt payments. For the reasons which follow, we hold that such a sentence was indeed unreasonable.
I
We begin with the facts, and then discuss what transpired in the district court at sentencing. Along the way, and in response to our colleague’s dissent, we add a bit of background on the relationship between departures under U.S.S.G. § 5K1.1 and variances after United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).
A
For years, James Winston Hayes ran ACCESS Group Software, LLC, a successful computer software company in Alabama. ACCESS sold educational software to the Alabama Department of Postsecond-ary Education (“ADPE”), and the two-year colleges it regulates. ACCESS did business with more than 25 two-year colleges and technical schools in Alabama.
Starting in 2002, when he was 59, Mr. Hayes decided to increase his company’s chances of being profitable by rigging the competitive bid processes through which the ADPE awards contracts to vendors. Over the course of four years, Mr. Hayes paid over $600,000 in bribes to Roy Johnson — the then-Chancellor of the ADPE— his family, and his friends. The payments, to list a few, included $124,400 towards the construction costs of Mr. Johnson’s home; $23,850 for a sound system in that home; and $55,000 — as directed by Mr. Johnson — to Mr. Johnson’s son-in-law, an attorney, for legal services that were never provided to Mr. Hayes or ACCESS. In order to conceal the nature of the payments, Mr. Hayes and others reimbursed third parties and created false invoices, contracts, and mortgages.
The bribes proved successful. From 2002 to 2006, ACCESS received more than $14 million in gross income from the ADPE, from which it realized a profit of approximately $5 million.
At some point, the federal government began investigating corruption at the ADPE. During the early stages of that investigation, the government contacted Mr. Hayes and subpoenaed his bank records. Perhaps realizing that the jig was up, Mr. Hayes obtained counsel and began cooperating with the government. Among other things, Mr. Hayes permitted his office and vehicle to be wired for audio and video and personally wore a recording device to tape meetings with several targets of the investigation. He also provided the government with documentation verifying his illicit financial dealings with a number of Alabama officials.
In 2007, the government charged Mr. Hayes by information with bribing Mr. Johnson, the former Chancellor of the ADPE — an agency receiving federal funds — in violation of 18 U.S.C. § 666(a)(2) (Count 1), and conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 2). The information also sought criminal forfeiture based on the charges in Counts 1 and 2. In February of 2008, Mr. Hayes pled guilty to Counts 1 and 2, and consented to forfeiture.
*1303 The probation office prepared a presen-tence investigation report to be used at Mr. Hayes’ sentencing. The report indicated that, under the 2010 version of the Sentencing Guidelines Manual, Mr. Hayes scored out to a total offense level of 33 and had a criminal history category of I, resulting in an advisory guidelines range of 135 to 168 months’ imprisonment. Neither party voiced objections to the report’s calculation of the advisory guidelines, and as a result the district court adopted that range at the initial sentencing hearing.[1]
B
The Sentencing Guidelines contain a number of departure provisions. Among them is § 5K1.1, which allows a departure from the advisory guidelines range “[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another[.]”
Because § 5K1.1 is silent as to the methodology to be used in determining the extent of a substantial assistance departure, the government has discretion in recommending a methodology, and the district court has discretion in deciding what methodology to use once it grants a motion for departure. See United States v. Lindsey, 556 F.3d 238, 245-46 (4th Cir.2009); United States v. Floyd, 499 F.3d 308, 312 n. 6 (3d Cir.2007). As the Seventh Circuit has explained:
Once the sentencing court decides to depart downward, it in turn may quantify the assistance the defendant provided by a simple numerical reduction in the offense level or by a percentage reduction of the total sentence; both methods (and perhaps others we do not consider here) are tools that appropriately recognize the rationale of the guidelines—that the reduction should reflect accurately the assistance that the defendant has rendered to the government.
United States v. Senn, 102 F.3d 327, 332 (7th Cir.1996). See also United States v. Vazquez-Lebron, 582 F.3d 443, 445 (3d Cir.2009) (“A [district [c]ourt need not follow a particular formula in calculating a § 5K1.1 departure—it may be appropriate to depart by a certain number of months or guideline ranges below the initial sentencing range.”); United States v. Hargrett, 156 F.3d 447, 450 n. 1 (2d Cir.1998) (“A downward departure based on [§ ] 5K1.1 does not require the district [court] to pick a new offense level and a particular sentence within the range set for that level; rather the court may simply pick a sentence of so many months without mention of an offense level.”).
Not surprisingly, therefore, reported eases illustrate a variety of approaches to § 5K1.1 departures. Sometimes, as was the case here, the departure is based on offense levels deducted from the defendant’s total offense level. See, e.g., United States v. Livesay, 525 F.3d 1081, 1087 (11th Cir.2008) (government recommendation of three-level downward departure from defendant’s total offense level); United States v. Martin, 455 F.3d 1227, 1233 & n. 4 (11th Cir.2006) (government recommendation of nine-level downward departure from defendant’s total offense level); United States v. Knapp, 955 F.2d 566, 568 (8th Cir.1992) (district court’s seven-level downward departure from defendant’s total offense level). Sometimes the departure is based on a percentage deduction from the bottom, midpoint, or top of the defendant’s advisory guidelines range. *1304 See, e.g., United States v. Burns, 577 F.3d 887, 889 (8th Cir.2009) (en banc) (government recommendation of 15% downward departure); United States v. Senn, 102 F.3d 327, 332 (7th Cir.1996) (government recommendation of 50% downward departure). And sometimes the departure is based on a reduction of a specific number of months from the defendant’s advisory guidelines range. See, e.g., United States v. Koufos, 666 F.3d 1243, 1254 (10th Cir.2011) (government recommendation of 20-month reduction from bottom and top of applicable range).
Regardless of the methodology used, once the district court grants a motion for downward departure under § 5K1.1, it will be left with a new number (or range of numbers) insofar as the Sentencing Guidelines are concerned. See United States v. Hippolyte, 712 F.3d 535, 541 (11th Cir.2013) (“A departure provision is a change to a sentencing guideline range based on, e.g., substantial assistance to authorities.”); U.S.S.G. § 1B1.1, n.1(E) (“ ‘Downward departure’ means [a] departure that effects a sentence less than a sentence that could be imposed under the applicable guideline range or a sentence that is otherwise less than the guideline sentence.”). The “calculation of the initial advisory [guidelines range, along with any applicable departures, results in a ‘final advisory [guidelines sentencing range.’ ” United States v. Lozoya, 623 F.3d 624, 626 (8th Cir.2010).
A concrete example helps put these principles into focus. Assume that a defendant has an advisory guidelines range of 70-87 months’ imprisonment. If the district court grants a government § 5K1.1 motion which recommends a 50% departure from the bottom of that range, the new bottom number for guidelines purposes will be 35 months of imprisonment (50% of 70 = 35). The district court will then have to determine whether, under the factors set forth in 18 U.S.C. § 3553(a), it should sentence the defendant to 35 months, something less, or something more. That is the approach dictated by the Sentencing Guidelines and our cases. See U.S.S.G. § 1B1.1(a)-(c) (“Application Instructions”) (district court must fipst (a) determine the guidelines range, and then (b) consider departures, including those under Chapter 5K, before (c) taking into account the § 3553(a) factors); United States v. McVay, 447 F.3d 1348, 1356 (11th Cir.2006) (“[A]fter it has decided the length of departure warranted by the substantial assistance motion, the district court is obliged to take into account the advisory [guidelines and the sentencing factors set forth in ... § 3553(a) in fashioning a reasonable sentence.”); Martin, 455 F.3d at 1236 (same).[2]
C
In this case, the government filed a motion for downward departure pursuant to § 5K1.1 based on Mr. Hayes’ substantial assistance, as well as a separate sentencing memorandum. In its motion, which discussed only matters related to Mr. Hayes’ cooperation and assistance, the government recommended that the district court depart from an offense level of 33 to an offense level of 25, with a corresponding advisory guidelines range of 57-71 months’ imprisonment. Then, apparently traveling under the unstated assumption that the district court would grant its motion for *1305 departure, the government advocated that the district court sentence Mr. Hayes to 60 months in custody. In its separate memorandum, the government again recommended a final sentence of 60 months’ imprisonment, based in large part on its § 5K1.1 motion for a downward departure. In so doing, the government at times conflated the factors to be considered under § 5K1.1 with the factors to be considered under § 3553(a). Although the government’s separate bases for the ultimate 60-month recommendation may not have been artfully stated, at the initial and second sentencing hearings the district court and the parties understood that the government was moving for a downward departure (to 57-71 months in custody) under § 5K1.1 based solely on Mr. Hayes’ substantial assistance, and that the government’s bottom-line recommendation of a 60-month prison sentence corresponded to the point within the recommended post-departure range where the government thought the district court should sentence Mr. Hayes after considering the totality of the circumstances and the § 3553(a) factors.[3]
The district court pointed out, and the government agreed, that consistent with McVay, 447 F.3d at 1356, it had to rule on the motion for downward departure before hearing from the parties on what would constitute a reasonable sentence under § 3553(a). At the first sentencing hearing, the district court granted the government’s § 5K1.1 motion, but departed more than the government had recommended. Considering only “[Mr. Hayes’] substantial assistance to the government[,]” the district court found that the “appropriate ... guideline[s] level for consideration ... [was] [l]evel 22, which when combined with the criminal history category of I[,] create[d] an advisory guideline[s] range of 41 to 51 months.”
After granting the government’s § 5K1.1 motion, the district court heard from the parties (mainly at the second sentencing hearing) with respect to the sentence it should impose. Mr. Hayes requested a downward variance to a sentence of probation or a relatively short term of imprisonment based on a number of factors, including his culpability relative to Mr. Johnson, his otherwise lawabiding life, his role as his father’s former caretaker, his age and deteriorating physical health, and his not posing a risk to society. The government responded that a total sentence of 60 months’ imprisonment was appropriate because Mr. Hayes’ crimes were serious and involved the corruption of high-ranking public officials, obstructive behavior, and significant amounts of state funds. The government emphasized that the sentence imposed on Mr. Hayes should be one that not just punished him for his conduct, but also deterred others from engaging in similar conduct.
The district court stated that it had sufficient information on all of the § 3553(a) factors, except for the need to avoid unwarranted sentence disparity, and proceeded to read summaries of the dispositions in 14 related cases from a chart provided by the probation office. The district court then noted that Mr. Hayes’ “offense was serious” and that the “sentence should promote respect for the law and provide just punishment for the offense.” Additionally, the district court remarked “that just because a crime is a white collar crime, it does not mean that it does not need to be deterred,” and “agree[d] with the government that prison sentences are probably the best deterrence ... [for] other people who might consider similar conduct.” The district court found *1306 that Mr. Hayes “seemfed] genuinely remorseful,” was unlikely to commit further crimes, and was not a risk to the public. In response to Mr. Hayes’ contentions regarding his age and health, the district court noted that it was “aware of the ability of the government to provide almost any medical care that’s neededf ] [and that although] ... age is something [it] can consider, ... [it did not] consider it to be overwhelming or a large factor in this case.”
Returning to the disparity issue, the district court said the following: “And I’ve spoken at length about the need to avoid unwarranted sentencing disparity] among similarly situated defendants. And in having gone through all of that, I don’t want anybody to think that [it] was like the overwhelming factor. It’s just I had a lot of information about that ... that I hadn’t focused on and that I wanted to go through.” The district court did not explain what disparity, if any, would result if it sentenced Mr. Hayes to some term of imprisonment.
The district court, noting its authority to impose a non-guidelines sentence under Booker, 543 U.S. at 259-60, 125 S.Ct. 738, sentenced Mr. Hayes to concurrent terms of three years’ probation, with six to twelve months of home confinement. It also ordered Mr. Hayes to pay $628,454.28 in restitution, to forfeit $5 million, and to pay a $1,000 fine and $200 in special assessments. The district court stated that the sentence was “sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing and is reasonable when considering the sentencing factors found at [§ ] 3553(a).” The government objected to the procedural and substantive reasonableness of the sentence, including the extent of the downward departure pursuant to § 5K1.1 and the reasonableness of the probationary terms the district court imposed.
On appeal, the government does not challenge the extent of the district court’s § 5K1.1 departure. The only argument the government makes is that the concurrent three-year terms of probation are substantively unreasonable. As a result, that is the only argument we address.
II
In imposing sentence, a district court may not presume that the range produced by application of the Sentencing Guidelines is reasonable, see Rita v. United States, 551 U.S. 338, 351, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), and must consider the factors set out in 18 U.S.C. § 3553(a). These are “(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most efficient manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range [as set forth in the Sentencing Guidelines] ...; (5) any pertinent policy statement ... issued by the Sentencing Commission....; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.” 18 U.S.C. § 3553(a).
*1307 A
We review the substantive reasonableness of a sentence for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). In conducting that review, we examine the “totality of the circumstances, including the extent of any variance from the [guidelines range,” but we cannot presume that a sentence outside of that range is unreasonable. Id. We must give “due deference” to the district court’s “decision that the § 3553(a) factors, on a whole, justify the extent of the [variance]. The fact that [we] might have reasonably concluded that a different sentence was appropriate is insufficient to justify reversal[.]” Id. See also United States v. Langston, 590 F.3d 1226, 1237 (11th Cir.2009) (“The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors.”) (citation and internal quotation marks omitted). Nevertheless, as we said several years ago,
[a] district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors. As for the third way that discretion can be abused, a district court commits a clear error of judgment when it considers the proper factors but balances them unreasonably[,] ... arriving at a sentence that does not achieve the purposes of sentencing as stated in § 3553(a).
United States v. Irey, 612 F.3d 1160, 1189 (11th Cir.2010) (en banc) (citations and internal quotation marks omitted).
We acknowledge the institutional superiority that district courts possess with regards to sentencing, and are mindful that appellate review for reasonableness is not a license to substitute our views for those of the district court. We are nevertheless convinced, under the deferential abuse of discretion standard, that the district court here, committed a clear error of judgment in balancing the § 3553(a) factors, and that its downward variance to probation produced a sentence that was outside of the range of reasonable sentences permitted by the record. See Gall, 552 U.S. at 51, 128 S.Ct. 586; Irey, 612 F.3d at 1190.
In at least one other case involving both an initial § 5K1.1 departure and a subsequent variance, we analyzed the substantive reasonableness of the variance employing the post-departure range/number as the reference point. See United States v. Crisp, 454 F.3d 1285, 1289-90 (11th Cir.2006) (“Even if the district court had not based the extent of the § 5K1.1 departure on improper considerations, its improper leap from the post-departure guideline range of 6-12 months to 5 hours would still have to be corrected.”). We do the same here, and use the 41-51 month range produced by the § 5K1.1 departure as the reference point for the variance.
The district court recognized that Mr. Hayes’ crimes (bribes of $600,000 paid out over four years, resulting in approximately $5 million in profits) were serious, that white-collar offenses need to be deterred, and that prison sentences are probably the best deterrent for those who might think about engaging in similar conduct. It never explained, however, how concurrent probationary terms with a period of home confinement would constitute just punishment for Mr. Hayes’ multi-year bribery scheme, provide general deterrence for others, or promote respect for the law. See generally United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir.2009) (explaining that the “justification must be compelling *1308 enough to support the degree of the variance and complete enough to allow for meaningful appellate review”).
As Mr. Hayes points out, the district court found that he was genuinely remorseful, was not likely to commit further crimes, and was not a risk to the public, but these factors—which are usually present in most white-collar cases resulting in a guilty plea—cannot be seen in a vacuum and must be balanced against the other applicable § 3553(a) factors. In any event, the district court did not explain why they called for a variance down to probation.
We recognize that the district court took into account the possibility of unwarranted sentencing disparity, but that factor, on this record, did not justify sentencing Mr. Hayes to probation. “[T]he need to avoid unwarranted sentencing disparity ... requires the [district] court to consider other similarly situated defendants ... who were convicted of similar crimes.” United States v. McQueen, 727 F.3d 1144, 1160 (11th Cir.2013). First, the district court never explained what unwarranted sentencing disparity would result if Mr. Hayes were sentenced to some term of imprisonment, and our review of the chart prepared by the probation office does not reveal any such unwarranted sentencing disparity among similarly situated individuals. The one person who could be said to be most closely situated to Mr. Hayes was Mr. Johnson, the former Chancellor of the ADPE and the recipient of Mr. Hayes’ bribes. Mr. Johnson, who like Mr. Hayes received a downward departure based on a government § 5K1.1 motion, was sentenced to 78 months in prison after pleading guilty to conspiracy to commit bribery, bribery, conspiracy to commit money laundering, obstruction of justice, and tampering with a witness. Second, even if the loss resulting from crimes involving corruption can be seen as a rough proxy for similarity, four of the five related defendants who were responsible for losses over $250,000 received prison terms. And the one who was sentenced to probation was responsible for just over $300,000 in losses, less than half of the amount of money that Mr. Hayes was ordered to pay in restitution.
The district court also considered Mr. Hayes’ age and health, but it did not think they were overwhelming factors. They, too, do not support Mr. Hayes’ sentence of probation.
B
In a number of opinions—some involving defendants who provided substantial assistance to the government—we have explained that general deterrence is an important factor in white-collar cases, where the motivation is greed. In those same opinions, we have set aside sentences of little or no imprisonment because they do not constitute just punishment for the offense, do not promote respect for the law, and will not do much to deter similar criminal activity by others. See, e.g., United States v. Kuhlman, 711 F.3d 1321, 1328-29 (11th Cir.2013) (vacating, as substantively unreasonable, sentence of probation (for “time served” while on pretrial release) for defendant responsible for $3 million health care fraud scheme); United States v. Livesay, 587 F.3d 1274, 1278-79 (11th Cir.2009) (vacating, as substantively unreasonable, sentence of probation for defendant involved in fraud scheme resulting in loss of over $80 million); Martin, 455 F.3d at 1239-41 (vacating, as substantively unreasonable, sentence of seven days in custody for defendant involved in fraud scheme resulting in loss of over $80 million); Crisp, 454 F.3d at 1290-92 (vacating, as substantively unreasonable, sentence of probation for defendant who participated in bank fraud scheme resulting in loss of *1309 about $484,000). We come to the same conclusion here.
Bribery cannot properly be seen as a victimless crime, for in a sense it threatens the foundation of democratic government. Putting aside the financial havoc it can cause, bribery tears at the general belief of the citizenry that government officials will carry out their duties honestly, if not always competently. And that harm, though it may at times appear intangible, is real.[4]
C
We do not mean to suggest that a downward variance can never be granted in white-collar cases, or that a sentence of probation is never permissible for defendants convicted of bribery or corruption offenses. Indeed, we have upheld, as reasonable, downward variances in several fraud cases where the government has appealed. See United States v. Vawter, 167 Fed.Appx. 101, 103 (11th Cir.2006); United States v. Montgomery, 165 Fed.Appx. 840, 842-43 (11th Cir.2006).
But there are bribes, and then there are bribes. Mr. Hayes did not just give a onetime gratuity to a local zoning inspector to expedite a building permit for a pool. He paid over half a million dollars in bribes, over a four-year period, to a high-ranking Alabama official so that his company could continue to receive lucrative government contracts — efforts which were rewarded by a corporate bottom line that got fatter by $5 million — and for that he received probation. As corruption cases go, this was bribery writ large, and on this record the district court’s significant variance down to probation cannot stand.
D
In closing, we respond to some of the issues raised by our colleague in dissent. As we explain, we disagree with his view of the case.
First, our colleague says that the government led the district court into committing procedural error by recommending that Mr. Hayes’ offense level be reduced by a certain number of levels for substantial assistance. We do not believe that assessment is correct. The numerous cases cited earlier in this opinion indicate that one of the permissible ways to compute a departure under § 5K1.1 is to reduce a defendant’s offense level. See Lindsey, 556 F.3d at 245-46; Livesay, 525 F.3d at 1087; Floyd, 499 F.3d at 312 n. 6; Martin, 455 F.3d at 1233 & n. 4; Senn, 102 F.3d at 332. Although § 5K1.1 has been around for decades, we know of no cases which have suggested, much less held, that a substantial assistance departure cannot be accomplished in this manner. Tellingly, our colleague does not cite to any.[5]
*1310 Second, according to our colleague we are sanctioning a procedural error committed by the district court at the behest of the government. That, however, is not so, for there was no procedural error. As we have already explained, nothing in the text of § 5K1.1 prohibits a district court from effecting a substantial assistance departure through a reduction of the defendant’s total offense level. “Accordingly, the district court’s reference to offense levels [here] in making its discretionary decision of how far to depart did not amount to the application of a ‘sentencing range’ authorized and made applicable by the Sentencing Guidelines[.]” Lindsey, 556 F.3d at 246.[6]
It may be that our colleague thinks that the § 5K1.1 motion did not justify the substantial departure the government was recommending, and/or that the district court departed too far when it granted that motion. Whatever the validity of those concerns, we do not comment on them because no one has raised them on appeal. The government could have tried to argue that the district court erred in departing beyond its § 5K1.1 recommendation, or committed another type of procedural error, but it chose not to make those arguments in its brief, and our general practice is to not address issues that are not properly raised by the parties.
We recognize that, normally, we ensure that there is no procedural error before addressing a claim of substantive unreasonableness, see Gall, 552 U.S. at 51, 128 S.Ct. 586, but we will not reach out to address a possible procedural error when neither the defendant nor the government have complained about it. Our cases, in fact, are replete with the rule that we do not have a duty to raise and decide issues — even constitutional ones — not mentioned by the parties. See, e.g., United States v. Curtis, 380 F.3d 1308, 1310 (11th Cir.2004); United States v. Rodriguez, 279 F.3d 947, 950 n. 3 (11th Cir.2002); United States v. Nealy, 232 F.3d 825, 830 (11th Cir.2000).
The cases our colleague cites are consistent with our general approach. In those cases either the defendant or the government asserted procedural error in contesting the sentence, and the panels in those cases understandably ruled on the procedural challenges before addressing substantive reasonableness. See United States v. Barner, 572 F.3d 1239, 1247-52 (11th Cir.2009) (defendant raised claim of procedural error); United States v. Carter, 564 F.3d 325, 326 (4th Cir.2009) (government raised claim of procedural error); United States v. Stephens, 549 F.3d 459, 466 (6th Cir.2008) (defendant raised claim of procedural error); United States v. Langford, 516 F.3d 205, 207 (3d Cir.2008) (defendant raised claim of procedural error). Here there are no procedural challenges by either side.
III
The concurrent three-year probationary sentences in this case are substantively unreasonable given the factors set forth in § 3553(a). First, the sentences convey the message “that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and prac *1311 tically none of their liberty,” Martin, 455 F.3d at 1240, and accordingly do not constitute just punishment for Mr. Hayes’ offenses or promote respect for the law. Second, the sentences do not provide for general deterrence because “[t]he threat of spending time on probation simply does not, and cannot, provide the same level of deterrence as can the threat of incarceration in a federal penitentiary for a meaningful period of time.” Livesay, 587 F.3d at 1279. Third, the sentences were not required to eliminate any sentencing disparity among similarly situated offenders because no such disparity existed. The sentences imposed on Mr. Hayes are therefore vacated, and the case is remanded for resentencing.
Vacated and Remanded for Resentenc-ing.

. The district court held a second sentencing hearing because it thought it might need testimony from witnesses concerning restitution. The parties ended up stipulating as to restitution, and the district court adopted their stipulation.

. If the district court sentences a defendant to a term different than the one produced by a § 5K1.1 downward departure, such a sentence is "considered a 'variance' " in guidelines parlance. See U.S.S.G. § 1B1.1, background. See also United States v. Lee, 725 F.3d 1159, 1165 n. 5 (9th Cir.2013) ("a 'variance' [is] the third step of the [guidelines procedure”).

. This was the same methodology employed in Martin, 455 F.3d at 1233 n. 4.

. "[A]mong a people generally corrupt liberty cannot long exist.” Edmund Burke, Letter to the Sheriffs of Bristol (April 3, 1777), in Henry Rogers, The Works of the Right Hon. Edmund Burke, Vol. 1, at 221 (London 1837).

. In the context of departures under § 5K2.0, we have written that, if the district court chooses to depart, "it has ‘wide discretion' in determining [the defendant’s] base offense level.” United States v. Gibson, 434 F.3d 1234, 1253 (11th Cir.2006). What we said in Gibson is consistent with our decision in this case.
Additionally, to the extent our colleague’s dissent might be read as suggesting that the district court could only have “departed” downward within Mr. Hayes’ original sentencing range of 135-168 months, such a suggestion would run counter to § 5K1.1. The Third and Fifth Circuits have reversed § 5K1.1 "departures” within the original sentencing range, holding that they are not "departures” at all. See Vazquez-Lebron, 582 F.3d at 445-46; United States v. Hashimoto, 193 F.3d 840, 843-44 (5th Cir.1999).

. Even if we assume that the district court committed procedural error, the government did not unambiguously invite the alleged error, a point our colleague seemingly acknowledges by conceding that the colloquy between the district court and the government "is somewhat convoluted.” Under our precedent, the invited error doctrine is not triggered by ambiguous statements or representations. See United States v. Dortch, 696 F.3d 1104, 1112 (11th Cir.2012) ("In the light of Dortch's ambiguous statement to the district court, the doctrine of invited error does not apply.”).