[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 22-10528

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JARVIS LOCKETT,
a.k.a. J-Rock,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:21-cr-00003-TES-CHW-1

_____

Before JORDAN, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Jarvis Lockett pleaded guilty after being caught dealing cocaine and participating in a dog fighting ring. His sentence was enhanced because a firearm was found at the home where he dealt the drugs, and the district court varied upward based on its conclusion that the applicable Guidelines range did not adequately reflect the seriousness of Lockett's misconduct. Because the district court did not err in either of those determinations, we affirm Lockett's sentence.

**I.**

Lockett was indicted along with ten co-defendants for his participation in a criminal organization based out of Roberta, Georgia that was involved in both cocaine distribution and dog fighting. He pleaded guilty to one count of distribution of cocaine and one count of conspiracy to participate in an animal fighting venture. In exchange, the remaining counts against him were dismissed. The plea agreement also included a stipulation of facts that Lockett agreed the government could prove beyond a reasonable doubt.[1]

---

[1] Our statement of the facts derives primarily from this stipulation, as well as the parts of the presentence investigation report to which Lockett did not object. *See United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the

22-10528                Opinion of the Court                3

The evidence showed that Lockett purchased some $250,000 worth of cocaine and cocaine base (also known as crack cocaine) from his co-conspirators for the purpose of distribution. Operating out of his mother's house, Lockett sold both forms of the drug to a confidential informant. Lockett's cell phone records revealed that he texted several of his co-conspirators that his customers were upset by the low quality of the cocaine that he was selling them. He also said, referring to the possibility of being arrested on drug charges: "Man feds can kiss my a**, I kill the feds before them b****es lock me up for something talking about talking to a b****. Hell yea they gotta die boy, imma kill me some b****es." When law enforcement executed a search warrant at Lockett's mother's house, they found over $2,500 in cash and plastic bags containing cocaine and cocaine base in a bedroom. They found several more bags of narcotics outside the residence. Agents also found two guns belonging to Lockett's stepfather and one unclaimed handgun in another bedroom. In total, Lockett is accountable for over 900 grams of cocaine and cocaine base.

Lockett also played a leadership role in the gang's dogfighting operations. He organized and attended several dog fights, brought his own dogs to fight, acted as a referee for at least two dog fights, and discussed killing several dogs. This dog fighting ring involved over 150 animals. When law enforcement searched Lockett's mother's house, they found fourteen dogs that had

---

law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes.").

scarring consistent with dog fighting, as well as break sticks, photos of dogs fighting, blood-stained carpet and walls, and a dog fighting pit. When law enforcement searched Lockett's home, they found a pit bull with extreme injuries that had been crudely stapled shut rather than stitched. The dog died two days later. Agents also found still more evidence of dog fighting, such as medicine, a scale, veterinary paperwork, breeding certificates, and several bags of cash.

The Probation Office prepared a Presentence Investigation Report (PSI) to aid the district court in sentencing. For the drug distribution offense, the PSI calculated a base offense level of 24 under U.S. Sentencing Guidelines § 2D1.1(a)(5) (Nov. 2021). It increased this base offense by two levels pursuant to U.S.S.G. § 2D1.1(b)(1), which provides for a two-level increase if a firearm was possessed. This left an adjusted offense level of 26. For the dog fighting, the base offense level is 16 under U.S.S.G. § 2E3.1(a)(1). Because Lockett was an organizer or leader of this exceptionally large animal-fighting ring, the PSI applied a four-level increase pursuant to U.S.S.G. § 3B1.1(a). So his adjusted offense level for conspiracy to participate in an animal fighting venture was 20.

Next, the PSI applied the grouping rules for multiple offenses and calculated a combined adjusted offense level of 27. U.S.S.G. §§ 3D1.1(a), 3D1.4. The PSI then reduced that by two levels because Lockett had accepted responsibility, and by one more level because of Lockett's guilty plea. U.S.S.G. §§ 3E1.1(a),

(b). His total final offense level was thus 24. This, combined with a criminal history category of III, resulted in a Guideline imprisonment range of 63 to 78 months. The statutory maximum for the drug charge is 240 months, and the maximum for the dog fighting is 60 months. 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 49. Lockett objected to the application of the two-level enhancement for possessing a firearm in connection with the offense.

At sentencing, the district court overruled Lockett's objection, finding that it was not "clearly improbable" that the unclaimed gun found at Lockett's mother's house was connected to the drug distribution Lockett was conducting there. The court then used its discretion to vary upward from the Guideline range of 63 to 78 months and instead sentenced Lockett to 120 months on count two and 60 months on count nine, to be served concurrently. The district court explained its reasons: (1) that Lockett was the "mastermind" of the dog fighting, which was "heinous" and "awful"; (2) that he was "very involved in the distribution of drugs," and that this was bad for the community; (3) that Lockett used his mother's house for the drug distribution; (4) that Lockett said he was going to kill the federal agents before being caught; (5) the "extent of the $250,000 of drugs"; and (6) the sentences given to co-defendants and ensuring that "there is no disparity" between them.

Lockett appealed, arguing first that the application of the two-level enhancement was in error, and second that his above-Guidelines sentence is substantively unreasonable.

## II.

"We review the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts *de novo*." *United States v. Gallo*, 195 F.3d 1278, 1280 (11th Cir. 1999). "We review the substantive reasonableness of a sentence for abuse of discretion." *United States v. Hayes*, 762 F.3d 1300, 1307 (11th Cir. 2014). In conducting this review, "we will reverse a sentence as substantively unreasonable only if we are left with the definite and firm conviction that the District Court committed a clear error of judgment in weighing the factors by arriving at a sentence outside the range of reasonable sentences dictated by the facts of the case." *United States v. Alberts*, 859 F.3d 979, 985 (11th Cir. 2017) (quotations omitted).

## III.

### A.

The district court did not procedurally err when it imposed an enhancement under U.S.S.G. § 2D1.1(b)(1), which provides for a two-level increase in a defendant's base offense level if he possessed a dangerous weapon. U.S.S.G. § 2D1.1(b)(1). This enhancement "reflects the increased danger of violence when drug traffickers possess weapons." *Id.* § 2D1.1 cmt. n.11(A). The commentary to the Guidelines explains that the enhancement should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*

Our cases have held that the enhancement should apply so long as the government can "establish by a preponderance of the

evidence that the firearm was present at the site of the charged conduct." *United States v. Carrasquillo*, 4 F.4th 1265, 1272 (11th Cir. 2021) (quotation omitted). In short, the mere presence of a firearm at the location of the alleged crime is all that is required for the government to meet its initial burden. *Id.* After that, the burden shifts to the defendant to show that "a connection between the weapon and the offense was clearly improbable." *Id.* (quotation omitted).

The government met that initial burden, and Lockett failed to rebut it. The district court concluded that it was more likely than not that two of the three guns at Lockett's mother's house belonged to Lockett's stepfather, but that the third gun was unclaimed. So there was at least one unclaimed firearm present at the home where it is undisputed that Lockett repeatedly sold drugs. On the basis of those facts, we agree with the district court that it is not clearly improbable that this gun was possessed in connection with the drug offense.

**B.**

Lockett's sentence of 120 months imprisonment is not substantively unreasonable. Lockett bears the burden of demonstrating that this sentence is unreasonable "in light of the record and the § 3553(a) factors." *United States v. Gonzales*, 550 F.3d 1319, 1324 (11th Cir. 2008). Section 3553(a) sets out factors that a sentencing court must consider, including (but not limited to): "the nature and circumstances of the offense and the history and characteristics of the defendant"; the need for the sentence "to

reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; the need for the sentence to afford adequate deterrence and to protect the public from further crimes; the kinds of sentences available and the sentencing range; and "the need to avoid unwarranted sentence disparities among defendants" charged with similar conduct.  18 U.S.C. § 3553(a).  A sentence that is "well below the statutory maximum" is an indicator that the sentence is reasonable.  *United States v. Taylor*, 997 F.3d 1348, 1355 (11th Cir. 2021).

Lockett argues that the district court abused its discretion because it gave significant weight to an improper factor. Specifically, he contends that the district court based the upward variance primarily on the dog fighting charges, which carry a statutory maximum of 60 months.  But a closer look at the record reveals that this premise is faulty.

The district court explained that "this is one of those times" where the Guideline range "substantially understates the seriousness of the offense."  True, "one of the things" that the district court considered was Lockett's "mastermind" role in the dog fighting, which the court described as "heinous" and "awful." But the court also took into account many other factors relating to the drug charges.  The court considered (1) that Lockett was "very involved in the distribution of drugs," which is harmful to the community; (2) that Lockett used his mother's house to distribute drugs; (3) that Lockett said he would "kill the feds" before he would go to prison; (4) the magnitude of the drugs Lockett distributed;

22-10528                Opinion of the Court                9

and (5) the need to ensure that Lockett's sentence was consistent with the sentences imposed on his co-defendants. Taking all of those factors together, the court used its discretion to vary upward and sentence Lockett to 120 months imprisonment, which is still well below the statutory maximum for the drug charge.

On this record, Lockett's contention that the court "said little about the drug charges in imposing the sentence," is simply implausible. Five of the six reasons given for the upward variance were unrelated to the dog fighting charge. We are not convinced that the district court committed a clear error of judgment in imposing this sentence, nor that the sentence is outside the range of reasonableness dictated by the facts of the case. *See Alberts*, 859 F.3d at 985.

★    ★    ★

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**