**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 24-11596

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOHN LEE,
a.k.a Giovanni,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00437-WFJ-SPF-1

————————————

Before JORDAN, JILL PRYOR, and KIDD, Circuit Judges.

PER CURIAM:

John Lee devised a fraudulent scheme to acquire over $90
million worth of jewelry from a victim in Qatar. He now appeals

his 17-year sentence of imprisonment for mail fraud and interstate transfer of stolen property. Lee argues that his sentence, which was a 107-month upward variance from the advisory guideline range, is unreasonable. Based on our caselaw and the reasons the district court articulated for his sentence, Lee is correct. So we vacate his sentence and remand for resentencing.

## I. BACKGROUND

In April 2019, Lee, who billed himself as a "master psychic and love and relationship advisor," began working with M.S., a client who lived in Qatar. After more than three years as M.S.'s spiritual advisor, Lee directed her to send him some of her personal belongings to be "cleanse[d] . . . of bad spirits." M.S. complied. But when the "cleansing" proved ineffective to remedy M.S.'s "negative feelings," Lee convinced her to send her employer's items for similar cleansing.

M.S. accessed her employer's safe without permission and took, among other things, a 12.20-carat diamond ring, a 75.42-carat diamond necklace, and a Rolex watch. She then mailed these luxury items via Fedex to Lee at addresses in Florida and New Jersey. Not surprisingly, Lee did not "cleanse" and return these valuable items to M.S. Instead, Lee sold or traded the pieces in New York and New Jersey. By persuading M.S. to participate in this scheme, Lee fraudulently procured, in total, over 40 pieces of jewelry that were collectively worth over $90 million. He brokered the sale of these stolen goods and acquired numerous luxury items from the proceeds.

In November 2022, Lee was indicted for mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 (Counts One through Four), and interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314 and 2 (Counts Five through Seven). Pursuant to a written agreement, Lee pleaded guilty to Counts Four and Seven in exchange for the dismissal of the remaining counts of the indictment and the promise that he would not face additional federal charges in relation to this scheme.

Lee's Presentence Investigation Report ("PSI") provided a base offense level of 7, United States Sentencing Guidelines Manual § 2B1.1(a)(1) (Nov. 2023), but applied a 24-level enhancement because the loss amount was approximately $90,000,000, *id.* § 2B1.1(b)(1)(M), and a 2-level enhancement because "the offense involved received stolen property, and [Lee] was a person in the business of receiving and selling stolen property," *id.* § 2B1.1(b)(4). The PSI further applied a 2-level reduction because Lee was a zero-point offender, *id.* § 4C1.1(a), a 2-level reduction for acceptance of responsibility, *id.* § 3E1.1(a), and a 1-level reduction because Lee timely notified the government of his intention to plead guilty, *id.* § 3E1.1(b). Lee's total offense level was 28. The PSI also placed Lee in criminal history category I because he did not have any previous qualifying convictions. With a total offense level of 28 and a criminal history category of I, the PSI provided an advisory guideline range of 78 to 97 months of imprisonment.

At sentencing, the district court determined that an additional 2-level enhancement was appropriate because a significant

portion of the offense occurred abroad. *See id.* § 2B1.1(b)(10) The court also granted the government's motion for a downward departure based upon Lee's substantial assistance, which lowered his offense level back to 28 and allowed his advisory guideline range to remain 78 to 97 months of imprisonment. *See id.* § 5K1.1. After announcing the revised calculations, however, the court cautioned that this guideline range "should create no comfort for [Lee's counsel] because he's going to need to talk to me [about] why I don't need to vary upward."

Following the government's argument in favor of a within-guideline sentence, the district court shared its thoughts with Lee's counsel so that he would not be "surprised." The court first explained that M.S.'s employer was "technically" the only victim under the guidelines, but Lee's conduct hurt "a lot of people," including M.S., who received a ten-year sentence in Qatar for her involvement in this fraud, and Joseph Grunberg, a New York City jeweler who lost almost $3,000,000 after unknowingly holding a stolen diamond as collateral for a loan.

The district court described the fraud as "really shocking" because it involved an "unbelievable" amount of money and a perceived "personal, emotional" trust between M.S. and Lee prior to their relationship's deterioration. It also found Lee's conduct to be "remarkably bold" and "reckless," as highly valuable jewelry was being sent internationally through commercial mail carriers. The court appreciated Lee's cooperation with the government and noted that Lee "was going to get a lot more time" had this not been

a factor. However, it expressed concern over uncharged conduct and stated that, in its view, "there [were] just a ton of collateral crimes that" were being forgiven or ignored, including (1) state and federal "fencing crimes," (2) money laundering, which "has [a] higher punishment under the guidelines," (3) Travel Act violations, and (4) RICO violations.

Lee's counsel then argued in favor of a within-guideline sentence. He asserted, in relevant part, that Lee was unaware of the significance of the stolen jewelry, including an extremely rare 20-carat pink diamond ring, and suggested that M.S. was not truly a victim, as she and her boyfriend were likely stealing from her employer before she met Lee. Lee also allocuted, taking responsibility for his actions and contending that he committed the instant offenses while under the influence of drugs.

Noting its consideration of only the PSI and plea agreement, the court sentenced Lee to concurrent terms of imprisonment of 17 years on Count 4 and the statutory maximum of 10 years on Count 7, followed by 3 years of supervised release. Although the court indicated that it had already justified the imposed sentence, it added that an upward variance was appropriate because: (1) Lee had committed "at least 10, 12 other major felonies" that went uncharged, (2) this offense was a "transnational massive fraud" that "involved a lot of people, [and] left a lot of collateral damage," and (3) the imposed sentence avoided unwarranted sentence disparities in "the hundred million dollars range of a fraud." In closing, the district court stated that this above-guideline sentence was

sufficient but not greater than necessary given the "seriousness of the offense behavior." Lee now appeals.

## II. STANDARD OF REVIEW

When reviewing the reasonableness of a sentence, we consider the totality of the circumstances under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

## III. DISCUSSION

On appeal, Lee generally asserts that the record does not reflect the "extraordinary" circumstances necessary to support the significant upward variance imposed in his case. He also offers several specific arguments as to why his sentence is substantively unreasonable and suggests that the district court failed to adequately consider the guideline range.[1]

As an initial matter, whether the district court altogether failed to consider the guideline range is generally a question of a sentence's procedural reasonableness. *See id*. However, to the extent Lee seeks to make such a procedural challenge, he did not object on this basis below, and he has abandoned this argument because it is not clearly raised in his initial brief. *See United States v.*

---

[1] Lee also suggests that our Court should strike the government's appellate brief because its argument in support of the imposed sentence breaches the terms of the plea agreement. We decline to do so because the plea agreement expressly allows the government to "support and defend" the imposed sentence, even when it is inconsistent with the parties' agreed-upon recommendation. *See United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016).

*Campbell*, 26 F.4th 860, 871 (11th Cir. 2022) (en banc); *United States v. Corbett*, 921 F.3d 1032, 1043 (11th Cir. 2019).

We now turn our focus to the core of Lee's appeal—the substantive reasonableness of his sentence. In this context, "[a] district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (citation omitted).

We are mindful that, under this standard, we will affirm "so long as the sentencing court's decision was in the ballpark of permissible outcomes," even if our Court believes a different sentence was more appropriate. *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) (citation modified). Indeed, we will vacate a sentence only when "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (citation modified). We also will not presume that a sentence outside of the calculated guideline range is per se unreasonable, nor will we require "'extraordinary' circumstances to justify" a substantial upward variance. *Gall*, 551 U.S. at 47, 51. But a district judge "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the

degree of the variance." *Id.* at 50. "[A] major [variance] should be supported by a more significant justification than a minor one." *Id.*

Section 3553(a)'s "overarching" instruction to courts is that any sentence must be sufficient, but not greater than necessary, to comply with the purposes of sentencing. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). The sentencing factors laid out in § 3553(a) include the kinds of sentences available, the guideline range, the offense's nature and circumstances, and the defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1), (3), (4). "[T]he weight given to each [§ 3553(a)] factor is committed to the sound discretion of the district court," and it "may attach great weight to one § 3553(a) factor over others." *Butler*, 39 F.4th at 1355; *see United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) ("We have not attempted to specify any particular weight that should be given to the guidelines range, and we have rejected any across-the-board prescription regarding the appropriate deference to give the Guidelines." (citation modified)).

Nonetheless, "§ 3553(a) explicitly directs sentencing courts to consider the Guidelines[,] [which] supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. Congress specifically commands the district court to consider the guidelines because they represent "an accumulation of knowledge and experience and were promulgated over time by the Sentencing Commission," an expert agency with the charge to consider the § 3553(a) factors. *United States v. Hunt*,

459 F.3d 1180, 1184 (11th Cir. 2006). The guidelines are important because they promote uniformity, a primary goal of sentencing, and a district court must "not give them so little consideration that it amounts to not giving any real weight to the guideline range in imposing the sentence." *Irey*, 612 F.3d at 1217 (citation modified).

We have held that sentences were substantively unreasonable where the district court did not afford adequate consideration to the guideline range. *See, e.g.*, *United States v. Hayes*, 762 F.3d 1300, 1307–11 (11th Cir. 2014) (holding that a sentence of probation was substantively unreasonable where the defendant's guideline range was 41 to 51 months); *United States v. Pugh*, 515 F.3d 1179, 1200–01, 1203 (11th Cir. 2008) (holding, in relevant part, that the district court abused its discretion by not giving any "real weight" to the guideline range of 97 to 120 months when sentencing the defendant to probation); *United States v. Martin*, No. 23-12139, slip op. at 17–18, 20 (11th Cir. Jan. 14, 2025) (holding that the district court abused its discretion in imposing a 115-month upward variance where it gave inadequate consideration to the guideline range and unreasonably weighed the defendant's criminal history and the need for deterrence). We find that Lee's case presents similar circumstances that require vacatur of his sentence.

Although the district court correctly calculated Lee's guideline range, it never (1) referenced the upper or lower bounds of that range after recalculating it to account for the government's substantial assistance motion, (2) calculated the size of the upward variance imposed when announcing its sentence, or (3) described

Lee's guideline range as inadequate to achieve the goals of sentencing. Indeed, in the single instance it referenced the guideline range, the court cautioned Lee not to take any "comfort" in this calculation and advised that it would likely vary upward prior to hearing any argument on the § 3553(a) factors. The court also did not recognize that it was imposing the statutory maximum penalty on Count Seven and opined earlier in the hearing that, but for Lee's cooperation with the government, it would have imposed an even higher sentence, without making any reference to the guideline range.

Considering the totality of these circumstances, we are not convinced that the district court gave "real weight" to Lee's guideline range, *Irey*, 612 F.3d at 1217 (citation modified), "which represents the knowledge, experience, policies, and purposes of the Sentencing Commission," *Martin*, slip op. at 18. Rather, it appears that the district court relied solely upon its own judgment to conclude that 17 years of imprisonment, twice the upper bound of the advisory range, was the only suitable sentence for Lee. *See Pugh*, 515 F.3d at 1200–01; *see also Gall*, 552 U.S. at 50 n.6.

A district court is within its discretion to weigh some sentencing considerations more heavily than others. *Butler*, 39 F.4th at 1355. But the record in this case reveals that the district court gave substantial, and potentially undue, consideration to factors such as the uncharged felonies it believed Lee to have committed while completely excluding any consideration of the 78-to-97-month guideline range. *See Irey*, 612 F.3d at 1217.

We conclude that the district court failed to afford due consideration to a pertinent § 3553(a) factor—the guideline range—in conducting its sentencing analysis. It thereby abused its discretion in imposing Lee's 17-year sentence. *See Pugh*, 515 F.3d at 1191–92, 1200–01; *Irey*, 612 F.3d at 1189.

## IV. CONCLUSION

We **VACATE** Lee's sentence and **REMAND** for resentencing.